[Cite as *PNC Bank, Natl. Assn. v. Bramson*, 2012-Ohio-2209.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97626**

# PNC BANK, NATIONAL ASSOCIATION

PLAINTIFF-APPELLANT

vs.

# MICHAEL G. BRAMSON, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-716732

**BEFORE:** S. Gallagher, J., Sweeney, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** May 17, 2012

**ATTORNEYS FOR APPELLANT**

Natalia Steele
Lisa B. Forbes
Vorys, Sater, Seymour & Pease
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, OH   44114


**FOR APPELLEE**

Michael G. Bramson, pro se
355 Solon Road, Unit 110
Chagrin Falls, OH   44022

Michael G. Bramson, pro se
355 Solon Road, Unit 203
Chagrin Falls, OH   44022

**Also listed:**
**For Nob Hill East Condominium Owners Association**

Pearce Leary
401 South Street
Building 4A
Chardon, OH   44024

SEAN C. GALLAGHER, J.:

**{¶1}** Plaintiff-appellant PNC Bank National Association ("PNC") appeals the decision of the trial court that adopted the magistrate's decision and granted judgment in favor of defendant Michael Bramson on PNC's claims for breach of contract, foreclosure, reformation of the mortgage to reflect Bramson's marital status at the time of execution of the mortgage, and reformation of the legal description of the property in the mortgage. For the following reasons, we reverse the decision of the trial court and remand for further proceedings.

**{¶2}** In 2003, Bramson executed a promissory note and borrowed $56,000 from PNC's predecessor in interest, National City Mortgage Company, to purchase the property located at 355 Solon Road, Unit 110, Chagrin Falls, Ohio 44022 ("Property"). Bramson also executed a mortgage, giving PNC a security interest in the Property. Bramson ceased paying his monthly obligation in June 2009, making his last payment in May 2009. Before Bramson's default, PNC sold his loan to Federal Home Loan Mortgage Corporation ("Freddie Mac"), but retained the servicing rights and the original note and mortgage. The servicing agreement authorized PNC to pursue the foreclosure action.

**{¶3}** Bramson filed a pro se answer, generally denying the allegations in PNC's complaint, and a counterclaim. Although styled as a counterclaim, the substantive portion

sought no affirmative relief. In his "counterclaim," Bramson challenged the sufficiency of service and provided notice of a separate action he filed against National City Bank, in which he alleged National City sold his note in a derivative sale. Bramson's prayer for relief sought dismissal of PNC's complaint and $3,000 for "damages sustained." Nothing in the counterclaim described a claim upon which to base the request for monetary relief.

{¶4} PNC filed a motion for summary judgment and presented evidence that included authenticated copies of the promissory note and mortgage; sworn statements indicating Bramson ceased making his required monthly payments in June 2009; a definite amount owed as of September 29, 2010, on the defaulted loan totaling $47,698.14; sworn statements confirming PNC's status as the holder of Bramson's note and original mortgage, which was properly recorded; sworn statements confirming PNC's right to foreclose on the property, extended from Freddie Mac through the servicing agreement; and a description of the clerical mistakes made in the Property description in Bramson's mortgage and several deeds created after the mortgage. Bramson filed a brief in opposition, without attaching any evidence. In fact, Bramson's brief in opposition conceded that PNC "had the legal right to service the loan for Freddie Mac so long as Freddie Mac owned the mortgage note." Bramson's sole issue with PNC's motion for summary judgment was that Freddie Mac no longer owned the note, and therefore, whether PNC retained the servicing rights was irrelevant. Bramson, however,

offered no evidence to contradict the undisputed evidence that PNC maintained the original note and mortgage and the exclusive right to foreclose on the property.

{¶5} The trial court denied PNC's motion for summary judgment and sua sponte determined that PNC failed to demonstrate its entitlement to enforce the loan in a journal entry dated March 14, 2011, which stated the following:

> Upon review of the plaintiff's motion for summary judgment, the brief in opposition, and the reply brief, the court finds that a genuine issue of material fact remains to be litigated and as such, plaintiff's motion for summary judgment as to plaintiff's complaint is denied. Plaintiff states in its affidavit that it is the holder of the note and mortgage but that it has sold the loan and the rights to the income stream. Although plaintiff has demonstrated that it is the holder of the note and mortgage and was the holder of these documents at the time the complaint was filed, because plaintiff has indicated that it has sold the note and because plaintiff has not offered any evidence in its motion for summary judgment to demonstrate that it is entitled to enforce the loan, the court cannot unequivocally find that plaintiff has proven this fact. Additionally, plaintiff did not file a motion to dismiss or a motion for summary judgment as to the counterclaim of Michael Bramson. Bench trial set in front of magistrate as to both the complaint of plaintiff and the counterclaim of the defendant by separate order.

PNC interpreted the trial court's entry, the portion that stated that "the court finds that a genuine issue of material fact remains to be litigated," as setting trial solely on the issue of whether PNC was the real party in interest to pursue the foreclosure action. At trial, Bramson also framed the trial issue as whether PNC had standing to prosecute the foreclosure action, demonstrated by the tenor of the parties' opening and closing statements. In fact, the magistrate interrupted Bramson's argumentative opening statement to reiterate the judge's

statement in the March 14, 2011 journal entry that "[PNC] needs to demonstrate it's entitled to encroach the loan[,] [b]ecause [PNC] hasn't offered any evidence in its motion for summary judgment to demonstrate it's entitled to enforce the loan, the court cannot unequivocally (inaudible) [. . .] ." PNC again presented evidence at the bench trial substantiating its claim as the proper party to prosecute the foreclosure action based on the servicing agreement with Freddie Mac. PNC also introduced the original note and mortgage documents at trial, but declined to move the originals into evidence.

{¶6} Thereafter, the magistrate found that PNC failed to establish damages on the breach of contract and foreclosure claims and the need for reformation at the trial. The magistrate noted that PNC was required to litigate every element of each claim because its motion for summary judgment was generally denied. The magistrate ruled in favor of Bramson upon all PNC's claims despite the "seemingly harsh result."

{¶7} We also note that in her decision, the magistrate contradicted the trial court's March 14, 2011 journal entry, which found PNC demonstrated it was the holder of the note and mortgage but failed to establish its right to enforce the loan. In the magistrate's decision, adopted by the trial court, the magistrate found that PNC's evidence, attached to the motion for summary judgment, did not establish that PNC was the holder of the note and mortgage at issue, but rather, only established PNC's authority to prosecute the foreclosure based on the servicing agreement with Freddie Mac — the single issue the trial court said remained to be

litigated at trial.    In that same instrument, the magistrate also incorrectly noted that in the March 14, 2011 journal entry, the trial court decided that "genuine issues of material fact remained to be litigated[,]" inadvertently pluralizing the word "issue."    The trial court adopted the magistrate's decision over PNC's objections and entered judgment in Bramson's favor upon PNC's claims.

{¶8} PNC timely appealed the decision of the trial court, raising three assignments of error.    PNC's three assignments of error generally argue that the trial court abused its discretion in adopting the magistrate's decision and granting judgment in favor of Bramson upon all of PNC's claims.    PNC's arguments have merit.

{¶9} "The decision to adopt, reject, or modify a magistrate's report will not be reversed on appeal unless the decision was an abuse of discretion."    *In re Estate of Mason*, 184 Ohio App.3d 544, 2009-Ohio-5494, 921 N.E.2d 705, ¶ 40 (8th Dist.), citing *Tiffe v. Groenenstein*, 8th Dist. No. 80668, 2003-Ohio-1335, ¶ 3.    The term "abuse of discretion" implies that the trial court's ruling was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶10} The March 14, 2011 entry denying PNC's motion for summary judgment specifically stated that "the court finds that *a genuine issue of material fact remains to be litigated * * ** because plaintiff has not offered any evidence in its motion for summary judgment to demonstrate that it is entitled to enforce the loan, the court cannot unequivocally

find that plaintiff has proven this fact." (Emphasis added.) The entry, however, also indicated that the bench trial was on "both the complaint of plaintiff and the counterclaim of the defendant," ostensibly indicating the trial would be on PNC's entire complaint. At the bench trial, Bramson and PNC both stated that the issue at trial was whether PNC had the ability to enforce the loan.

{¶11} While generally it can be presumed that a denial of summary judgment means the ensuing trial will be on all issues, in this case the trial court specifically stated that a single issue of fact remains to be litigated. A court speaks through its journal entries. *Dickerson v. Cleveland Metro. Hous. Auth.*, 8th Dist. No. 96726, 2011-Ohio-6437, ¶ 13, citing *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 47. Journal entries must be construed, as any other written instruments, by giving the language of the journal entry its ordinary meaning. *Lurz v. Lurz*, 8th Dist. No. 93175, 2010-Ohio-910, ¶ 17, citing *Sauerwein v. Sauerwein*, 6th Dist. No. L-95-084, 1996 WL 38809 (Feb. 2, 1996). An ambiguous journal entry requires interpretation. *Id.* "A [journal entry] is ambiguous if its terms cannot be clearly determined from a reading of the entire [entry] or if its terms are susceptible to more than one reasonable interpretation." *Militiev v. McGee*, 8th Dist. No. 94779, 2010-Ohio-6481, ¶ 30, citing *United States Fidelity & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 716 N.E.2d 1201 (2d Dist.1998).

{¶12} In this case, the trial court stated in its final entry adopting the magistrate's decision that "the court denied [PNC's] motion for summary judgment in its entirety." The trial court, however, abused its discretion by adopting the magistrate's decision without addressing the ambiguity, in the March 14, 2011 journal entry, **regarding the subject matter of the bench trial or the substantive contradictions between that entry and the magistrate's decision.**

{¶13} The trial court's decision to adopt the magistrate's decision and grant judgment in favor of Bramson upon all of PNC's claims is reversed and the matter remanded for further proceedings. Upon remand, the trial court must allow the parties to fully litigate all claims consistent with Civ.R. 53(D)(4)(b). It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

JAMES J. SWEENEY, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR